UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**RACHEL CLAIRE MYRSTOL-SNYDER**,<br><br>Debtor. | Case No. **15-60189-12** |

**MEMORANDUM of DECISION**

At Butte in said District this 18th day of May, 2015.

In this Chapter 12 bankruptcy, after due notice, the Court held a hearing on May 12, 2015, in Billings on the Chapter 12 Trustee's motion to dismiss and on Debtor's motion for order to show cause. The Chapter 12 Trustee, Joseph V. Womack of Billings, Montana appeared at the hearing in support of his motion to dismiss; Debtor Rachel Claire Snyder-Myrstol[1] appeared *pro se*; and Todd D. Gunderson and Martha Sheehy of Billings, Montana appeared on behalf of William and Barbara Wacker.[2] Debtor, Sherill Frickle, Craig Myrstol, Gus Pascall, Abigail Pascall, Lane Pascall, Cody Dimmick, and Todd Gunderson testified. The Wacker's Exhibits A, B and C were admitted into evidence.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334, and all issues before it are core

---

[1] On her petition, Debtor lists her name as "Rachel Claire Myrstol-Snyder." However, in other documents, Debtor lists her name as "Rachel Claire Snyder-Myrstol." Debtor clarified at the hearing that her name is indeed "Rachel Claire Snyder-Myrstol," which should be used in the caption. The Court directs the Clerk to correct the caption to "Rachel Claire Snyder-Myrstol."

[2] Erik LeRoy of Anchorage, Alaska had wanted to appear on behalf of William and Barbara Wacker, but was not able to establish a video conference connection at the time of the hearing.

matters on which it may enter a final decision under 28 U.S.C. § 157.

Debtor filed a voluntary chapter 12 petition on March 19, 2015, asserting she was a "family farmer" entitled to proceed under that chapter. *See* 11 U.S.C. § 109(f).[3] In her schedules filed March 23, 2015, Debtor lists total assets of $22,200.00 and total liabilities of $26,443.00. Debtor's liabilities relate to medical debt, fuel for heating a prior home, Christmas presents for her children, and a time share. Debtor's real property asset consists of a purported leasehold interest in property located at 1263 US Highway 87 North, Roundup, Montana (the "Property").

Debtor's scheduled personal property assets are minimal; $200.00 in a checking or savings account, $4,500.00 in household goods and furnishings, $500.00 in wearing apparel, and $11,000.00 for Debtor's one-half interest in a 2007 Chevrolet Silverado. Debtor listed no equipment or machinery used in a business, no farming equipment or implements, no farm supplies or feed, and no livestock. On Schedule I, Debtor discloses that she is an EMT and is employed by the Roundup School District as a substitute teacher; Debtor's spouse, Craig Myrstol ("Craig"), is employed by a drilling company.

Debtor, Craig, and Debtor's children lived at the Property from 2009 until March 18, 2015, when Debtor and her family were evicted from the Property pursuant to a Judgment entered by the Montana Fourteenth Judicial District Court, Musselshell County on March 2, 2015.[4] Debtor testified that she leased the Property from Toni 1 Trust, but did not have a copy of the lease. Debtor testified that while the Property is not suitable for growing crops, and Debtor

---

[3] Section 109(f) provides: "Only a family farmer or a family fisherman with regular annual income may be a debtor under chapter 12 of this title."

[4] Debtor testified that the eviction process started in June of 2014.

has never raised any type of crop for profit or sale, Debtor has raised horses and other animals on the Property. Debtor testified that she has received $1,000.00 from the sale of horses during the past five years. Debtor also raises chickens and sells the eggs. Debtor uses the proceeds from the sale of eggs to buy chicken feed. Debtor has never reported any income from the sale of horses or eggs on her income tax returns. Debtor's children also have cow and a steer that they are raising as 4-H projects. Debtor testified that she and her family own three pigs, two of which they will slaughter and eat. Debtor grows a garden and cans what she harvests from her garden for consumption by her family.

Debtor's eviction from the Property on May 18, 2015, was traumatic to Debtor and her family. Debtor and her family left many of their personal belongings and all their animals at the Property on March 18, 2015. Since filing her bankruptcy petition on March 19, 2015, Debtor has not asked for permission to go back to the Property to retrieve her family's personal belongings or animals. Debtor explained that she has not attempted to retrieve her belongings or animals because of the automatic stay.

The testimony and exhibits show that the Property at 1263 US Highway 87 North, Roundup, Montana was at one time owned by Margaret ("Toni") Bertran ("Bertran") and Barbara G. Newland-Tangwall ("Tangwall") (mother and daughter) as tenants-in-common. On or about February 25, 2011, Tangwall and Bertran transferred the Property to Toni 1 Trust.

The Wackers obtained a judgment against Tangwall in the Montana Fourteenth Judicial District Court, Musselshell County, Cause No. DV-07-93. Tangwall's transfer of her one-half interest in the Property was set aside, and the Wackers executed on their judgment and acquired Tangwall's one-half interest in the Property at a sheriff's sale conducted May 10, 2013. After

expiration of the one year right of redemption period, the Wackers recorded the sheriff's deed on May 13, 2014.

Bertran, after transferring her one-half interest in the Property to Toni 1 Trust, filed for bankruptcy in Alaska, and Larry D. Compton ("Compton") was appointed the chapter 7 trustee. In an adversary proceeding associated with Bertran's bankruptcy, U.S. Bankruptcy Judge Herb Ross held that Bertran's February 25, 2011, transfer of her one-half interest in the Property was a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A), and that Bertran's interest in such parcel was property of her bankruptcy estate.

In 2014, the Wackers and Compton commenced eviction proceedings against Debtor and Craig. In an order entered February 27, 2015, the Montana Fourteenth Judicial District Court, in Cause No. DV-14-54, found:

> As a matter of law and pursuant to 11 U.S.C. § 704, which this court takes judicial notice of, Larry D. Compton has full power and authority to administer the bankruptcy estate's one-half (½) interest (i.e. the one-half (½) interest formerly held by Margaret A. Bertran) in the subject property including eviction of the Defendants in the instant proceedings. Wackers, as purchasers of Barbara G. Newland-Tangwall's a/k/a Barbara Newland-Tangwall's one-half (½) interest in the subject property at the referenced sheriff's sale, likewise have full power and authority to take legal action to evict the Defendants.

Debtor and her family were evicted from the property on March 18, 2015. Debtor filed her bankruptcy petition on March 19, 2015.

The Trustee seeks to dismiss Debtor's case, arguing Debtor is not a family farmer. Debtor filed a response to the Trustee's motion on April 13, 2015. In her response, Debtor does not dispute the Trustee's contention that Debtor is not a family farmer. Instead, Debtor makes several statements, including an allegation that she did not receive a copy of the Trustee's motion

4

via the mail because the Trustee allegedly had Debtor's mail box removed from the Property and that Debtor did not have access to her computer because it was confiscated by the Trustee.

Debtor also filed on April 13, 2015, a motion requesting damages against Compton, Todd Gunderson, and the Wackers for their willful violation of the automatic stay. Debtor, in her motion, sets forth a laundry list of purported violations of the automatic stay, including an allegation that Compton, Todd Gunderson, and/or the Wackers removed Debtor's mail box. Attached to Debtor's motion is a letter to Debtor and Craig, from Todd Gunderson, dated March 23, 2015, advising Debtor and Craig that on March 18, 2015, half of their personal belongings were moved to Al's Mini Storage. The remainder of Debtor's family's belongings were scheduled to be moved to the storage facility on March 20, 2015. However, the remainder of the belongings were not moved because of Debtor's bankruptcy filing on March 19, 2015. The letter also states that "Ryan McCleary was scheduled to arrive at the premises on Thursday, March 19, 2015, at 12:00 p.m. to move six horses and two calves on your behalf. He did not show up. Again, due to the bankruptcy filing, all moving of any property and animals remaining on the premises has been halted."

Todd Gunderson testified that the perishable items in Debtor's refrigerator were given to Cody Dimmick, a friend who Debtor has been staying with since her eviction. The frozen food in Debtor's freezer still remains in the freezer at the Property. The Wackers removed a bale of hay from the Property, but later took it back to the Property. Barbara Wacker has been caring for Debtor's animals and chickens. The chickens were described as free range chickens that Debtor allowed to run freely on the Property. Todd Gunderson testified that he advised Barbara Wacker to give any eggs she gathered from the chickens to the food bank so they could be consumed

before they rotted.  Barbara Wacker testified that she has showed the Property to prospective purchasers and has a gentleman who is interested in buying the Property.  At Debtor's § 341 meeting of creditors, Todd Gunderson offered to meet Debtor at the Property so she could retrieve her personal belongings.  Debtor declined that offer.

Chapter 12 was designed to give "family farmers" an opportunity to reorganize under a special chapter of the Code, free from many of the provisions of chapter 11 that could hamper such a reorganization.  Under 11 U.S.C. § 109(f), only a "family farmer or family fisherman" with regular annual income may be a debtor under chapter 12.  Section 101(19) provides: "The term 'family farmer with regular annual income' means family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under chapter 12 of this title."  In turn, "family farmer" is defined by the Code to mean:

> individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $3,792,650 and not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for—
>
> > (i) the taxable year preceding; or
> >
> > (ii) each of the 2d and 3d taxable years preceding the taxable year in which the case concerning such individual or such individual and spouse was filed[.]

11 U.S.C. § 101(18)(A).  As used in the Bankruptcy Code, "farming operation" includes "farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state."  *See* 11

6

U.S.C. § 101(21).

This Court has previously addressed at length the "farming operation" component of chapter 12 eligibility. *In re Carsten,* 211 B.R. 719 (Bankr. D.Mont. 1997); *In re Buckingham*, 197 B.R. 97 (Bankr. D.Mont. 1996); *Indreland*, 77 B.R. at 270–71. In *Buckingham*, the debtors hog farm had failed prepetition; debtors were anticipating, during the course of their chapter 12 case, of rebuilding their hog farm into a sheep ranch; and in the interim, the debtors maintained that they satisfied the requirements of chapter 12 because they would derive some income from a grazing lease and horse breaking services. In rejecting the debtors' argument, and dismissing that chapter 12 case, the Court examined the seven criteria discussed in *In re Sugar Pine Ranch*, 100 B.R. 28, 31 (Bankr. D.Or. 1989), and concluded that "the Debtors' efforts produce neither crops nor commercial livestock, for sale or otherwise, now or in the foreseeable future." *Buckingham*, 197 B.R. at 107.

In the case *sub judice*, Debtor plants a garden and arguably raises animals, but primarily for her family's consumption. Debtor claims she has made $1,000.00 selling horses over the past five years and that she sells chicken eggs. The proceeds from the sale of eggs are used to buy feed for the chickens and Debtor concedes that she has never reported any income from the sale of horses or eggs on her income tax return.

The definition of "family farmer" found in § 101(18) requires a review of tax returns for the taxable year preceding the year of filing and determination of whether gross income from farming operations exceed other gross income. Congress chose, in enacting § 101(18)(A), to impose several requirements on those who would file for chapter 12 relief. As noted by the Bankruptcy Appellate Panel, "Congress has defined and limited eligibility to file a chapter 12

petition in such a fashion as to exclude some who appear to be family farmers in the lay sense of the phrase. That is the prerogative of the legislature." *In re Quintana*, 107 B.R. 234, 241 (9th Cir. BAP1989). Engaging in a farming operation at the time of filing is not alone sufficient. Congress also required, in § 101(18)(A), that a chapter 12 debtor establish gross income from farming operations constituted more than 50% of total gross income in one of two relevant periods—either the taxable year preceding the year of filing, or the 2nd and 3rd taxable years preceding the year of filing.

Debtor's efforts produce neither crops nor commercial livestock, for sale or otherwise, now or in the foreseeable future. Moreover, Debtor has not reported any gross income from farming operations in either the taxable year preceding the year of filing or the 2nd and 3rd taxable years preceding the year of her bankruptcy. In short, Debtor does not satisfy the 50% farm income requirement of § 101(18)(A)(i). Lack of statutory eligibility is "cause" for dismissal of the case. *Quintana*, 107 B.R. at 240–41.

While Debtor's request for sanctions is arguably moot, the Court finds it appropriate to provide the following discussion for the benefit of Debtor, who is appearing in this matter *pro se*. Debtor alleges the following are violations of the automatic stay:

   a.   Will not let debtor on the property.

   b.   Moved out some of their household possessions.

   c.   Cleaned out her freezer.

   d.   Stole the hay for the livestock.

   f.   They have leased 4-H animals for the children that they cannot access.

   g.   Chickens are running rampant, no eggs collected.

  h.  Barbara Wacker is on the property dolling out food from debtor freezer.

  i.  Barbara Wacker has been showing prospective buyers the property.

  j.  Bill Wacker removed debtor's hay for livestock from the premises.

  k.  Can't retrieve legal papers, receipts, ranch receipts, etc.

  l.  Can't retrieve cloths for children.

  m.  Displaced 5 children from their home.

  n.  Removed debtor's mail box.

  o.  To date still refuses to let debtor and her five under-age children back in their home, even with the court order saying the stay is in effect.

  p.  Todd Gunderson continues to harass the debtor as evidenced by the attached Exhibit B.

The undisputed facts show that Debtor was evicted from the Property pursuant to a court order on March 18, 2015, prior to her March 19, 2015, petition date. Debtor's eviction was not a violation of any automatic stay. Similarly, the removal of some of Debtor's possessions on March 18, 2015, from the Property was not a violation of any automatic stay. As to items a, e, f, k, l, m and o, Debtor has made no effort to retrieve her personal belongings or animals from the Property, has made no effort to tend to the animals and in fact has declined an offer by the Wacker's counsel to enter the Property to retrieve her personal property and animals.[5]

Barbara Wacker testified during the hearing that she gave Debtor's perishable food to Debtor's friend, Cody Dimmick. Debtor did not dispute such, leading the Court to find that

---

[5] An automatic stay is in place as a result of Bertran's Alaska bankruptcy. Perhaps that is the automatic stay that Debtor is fearful of violating. However, it appears both Compton and the Wackers would permit Debtor on the Property to remove her personal property and animals.

9

Debtor received the perishable food from her refrigerator. Barbara Wacker testified that Debtor's frozen food still remains in Debtor's freezer on the Property. Barbara Wacker admitted removing a bale of hay from the Property on or around May 18, 2015, but testified that the Wackers took the bale back to the Property. The chickens run rampant, as they did when Debtor occupied the Property. Neither the Trustee, Todd Gunderson nor Barbara Wacker had any knowledge of a mail box at the Property, and did not remove such. Todd Gunderson's letter to Debtor and Craig dated March 23, 2015, is not harassing, but rather, was sent to inform Debtor and Craig of various things, including that some of their personal belongings were moved to unit 84 Al's Mini Storage facility on March 18, 2015, that the moving of Debtor's other personal property was halted due to her bankruptcy filing, and that Cody Dimmick's husband, Stoney Dimmick, had removed some of the Dimmick's personal property. In sum, Debtor has failed to show any violation of the automatic stay.

For the reasons discussed above, the Court will enter a separate order as follows:

IT IS ORDERED that the Chapter 12 Trustee's motion to dismiss filed March 25, 2015, at docket no. 6 is granted; and this case is dismissed.

BY THE COURT

_Ralph B. Kirscher_
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana